**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| D.E.H., <br><br>         Petitioner, <br><br>         v. <br><br> PATRICIA HYDE, Acting Director of Boston Field Office, United States Immigration and Customs Enforcement, et al., <br><br>         Respondents. | Civil Action No. 1:25-cv-11271-DJC |

**RESPONDENT'S MEMORANDUM IN OPPOSITION TO PETITIONER'S**
**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C § 2241**

Respondents, by and through their attorney, Leah B. Foley, United States Attorney for the District of Massachusetts, respectfully submit this opposition to Petitioner D.E.H.'s ("Petitioner") Petition for Writ of Habeas Corpus ("Petition"). Doc. No. 1. Respondents responds to the Petition as contemplated by Rules 4 and 5 of the Federal Rules Governing Section 2254 cases.[1]

**INTRODUCTION**

Petitioner's detention by U.S. Immigration and Customs Enforcement ("ICE") is fully supported by the Immigration and Nationality Act ("INA"), its implementing regulations, and the Constitution. Contrary to Petitioner's assertion, Petitioner does not face "imminent removal under [the] March 14, 2025 Presidential Proclamation purporting to invoke the Alien Enemies

---

[1] *See* Rule 1(b) ("The district court may apply any or all of these rules to a habeas corpus petition…"); *Vieira v. Moniz*, No. CV 19-12577-PBS, 2020 WL 488552, at *1 n.1 (D. Mass. Jan. 30, 2020) (evaluating the Government's response and dismissing habeas petition under Section 2254 Rules).

Act ("AEA") of 1798.[2]  Doc. No. 1.  Instead, as set forth by ICE Enforcement and Removal

Operations ("ERO") Assistant Field Office Director Keith Chan, ICE arrested Petitioner after he

came to ICE's attention due to an arrest by the Boston Police Department for the crime of

larceny.  Exhibit A, ¶ 10.  ICE has not identified Petitioner as a member of Tren de Aragua

("TDA") and is detaining Petitioner pursuant to its statutory authority contained at 8 U.S.C. §

1225(b)(1)(B)(IV) as Petitioner is subject to an expedited removal order from the United States

because he is inadmissible to the United States and has been present in the United States for less

than two years.  *Id.*, ¶¶ 6, 12-14, 18-20.

Petitioner asks this Court to enter an order enjoining ICE from removing Petitioner from

the United States pursuant to the Proclamation.  Doc. No. 1, PRAYER FOR RELIEF.   This

relief is unwarranted and unnecessary as ICE is not detaining or seeking to remove Petitioner

pursuant to the AEA and because the U.S. District Court for the Western District of Texas has

entered an order that covers a class "consisting of all noncitizens in custody in the Western

District of Texas who were, are, or will be subject" to the Proclamation that mandates that

members receive "notice of any designation as an Alien Enemy under the Proclamation at least

30 days prior to any removal pursuant to the Proclamation".  *See M.A.P.S. v. Garite,* No. 25-CV-

00171-DB, 2025 WL 1379220, at *1 (W.D. Tex. May 13, 2025).[3]   Petitioner has been detained

---

[2] The President has invoked the Alien Enemies Act (AEA), Rev. Stat. § 4067, 50 U.S.C. § 21, to remove Venezuelan nationals who are members of Tren de Aragua (TdA), a designated foreign terrorist organization. See Presidential Proclamation No. 10903, 90 Fed. Reg. 13033 (2025). *A. A. R. P. v. Trump*, No. 24-1177, 2025 WL 1417281, at *1 (U.S. May 16, 2025)

[3] In *Sanchez Puentes v. Garite*, the district court also entered an order requiring twenty-one-day notice to any individual detained in the Western District of Texas pursuant to the AEA and the Presidential Proclamation. No. EP-25-CV-00127-DB, 2025 WL 1203179, at *17 (W.D. Tex. Apr. 25, 2025).  Such notice must "must include the individual's right to seek judicial review, and inform individuals they may consult an attorney, at their own expense, regarding

at the South Texas ICE Processing Center in Pearsall, Texas since May 9, 2025 and therefore appears to be a member of this class covered by the district court's orders in *Sanchez Puentes* and *M.A.P.S.* in the event Petitioner was designated as an Alien Enemy in the future. At that time, Petitioner could challenge his designation as an Alien Enemy and the lawfulness of the Proclamation in district court. But, at this juncture, with ICE pursuing Petitioner's detention and removal under the INA, specifically per 8 U.S.C. § 1225(b)(1)(B)(IV), Petitioner lacks standing to challenge the lawfulness of the AEA.

Additionally, the INA strips this Court of jurisdiction to review Petitioner's expedited removal order and from staying Petitioner's removal order. *Compere v. Riordan,* 368 F. Supp. 3d 164, 171 (D. Mass. 2019) (Explaining that because petitioner is "subject to a final order of removal and he seeks to enjoin ICE from enforcing that order … [h]is claim for injunctive relief falls, therefore, directly within the jurisdictional bar set by Congress."). As such, the Court must dismiss his Petition, deny his Motion for Temporary Restraining Oder, and vacate its Order enjoining ICE from removing Petitioner from the United States.

## **BACKGROUND**

### A. **Legal Background for Aliens Seeking Admission to the United States.**

In exercising its plenary power over immigration, Congress delegated to the Secretary of Homeland Security the responsibility for "[s]ecuring the borders," enforcing the immigration laws, and "control[ling] and guard[ing] the boundaries and borders of the United States against the illegal entry of aliens." 6 U.S.C. §§ 202(2) & (3); 8 U.S.C. § 1103(a)(5).

---

their detention and the Government's intent to remove them. Such notice must be given and written in a language the individual understands." *Id.*

Pursuant to 8 U.S.C. § 1225(a)(1), an alien present in the United States who has not been admitted is known as an applicant for admission. Per Section 1225(a)(3), all applicants for admission are subject to inspection by immigration officers to determine if they are admissible to the United States. The term "admission" is defined by the INA to mean "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A); *see also* 8 C.F.R. § 1235.1 (setting forth inspection procedures). Section 1225(b)(1) provides for the inspection of applicants for admission.

In the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104208, Tit. III, § 302(a), 110 Stat. 3009-579, Congress amended Section 1225(b) to add "expedited removal" procedures to "streamline[] rules and procedures . . . to make it easier to deny admission to inadmissible aliens," while ensuring that there is "no danger that an alien with a genuine asylum claim will be returned to persecution." H.R. Rep. No. 469, 104th Cong., 2d Sess. Pt. 1, at 157–58 (1996) (House Report). After IIRIRA, Section 1225(b) provides that, if an immigration officer determines that an alien "who is arriving in the United States" lacks valid documents or is inadmissible due to fraud, the officer "shall order the alien removed from the United States without further hearing." 8 U.S.C. § 1225(b)(1)(A)(i). Per Section 1225(b)(1)(A)(iii)(II), the expedited removal process can apply to an alien "who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that [the] alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility".

If, however, the alien expresses a fear of persecution or torture, the expedited removal order is held in abeyance and an asylum officer must determine whether the alien has a credible

fear. *See* 8 U.S.C. §§ 1225(b)(1)(A)(ii) & (B); 8 C.F.R. §§ 208.30, 235.3(b)(4). The alien "shall be detained pending a final determination of credible fear of persecution." 8 U.S.C. 1225(b)(1)(B)(iii)(IV). If an asylum officer makes a positive finding of credible fear, the individual is placed into removal proceedings to pursue asylum under 8 U.S.C. § 1229a. If the asylum officer makes a negative fear determination, the applicant has an opportunity to have such determination reviewed by an IJ. 8 U.S.C. 1225(b)(1)(B)(iii)(III); 8 C.F.R. § 1003.42. If the IJ reverses and makes a positive credible fear determination, the IJ must vacate the expedited removal order. *See* 8 C.F.R. § 1208.30(g)(2)(iv)(B). At that point, ICE will commence removal proceedings before the IJ under 8 U.S.C. § 1229a. *Id.*

If the IJ affirms the asylum officer's negative fear determination, the case is remanded to ICE for execution of the expedited removal order, and there is no right to appeal the IJ's decision to the Board of Immigration Appeals ("BIA"). 8 C.F.R. § 1208.30(g)(2)(iv)(A). Courts of appeals also lack jurisdiction to directly review expedited removal orders and credible fear determinations. 8 U.S.C. § 1252(a)(2)(A).

As explained by the Supreme Court, "[a]n alien subject to expedited removal thus has an opportunity at three levels to obtain an asylum hearing, and the applicant will obtain one unless the asylum officer, a supervisor, and an immigration judge all find that the applicant has not asserted a credible fear." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 110 (2020). Such individual, however, "is not entitled to immediate release" regardless of whether their asylum claim is reviewed fully or in an expedited manner. *Id.* at 111. The Supreme Court has confirmed that this statutory mandate for detention extends for the entirety of removal proceedings. *Jennings v. Rodriguez,* 583 U.S. 281, 302 (2018) ("[Section] 1225(b)(1) . . . mandate[s] detention of aliens *throughout the completion of applicable proceedings* and not just

until the moment those proceedings begin." (emphasis added)).    This is because Section 1225(b)(1)(B)(iii)(IV) provides for mandatory detention of individuals who have not established a credible fear until removal from the United States ("Any alien subject to the procedures under this clause *shall be detained* pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.") (emphasis added).

### B. Petitioner's Immigration and Criminal History.

Petitioner is a native and citizen of Venezuela.  Exh. A, ¶ 7.  On or about September 25, 2023, United States Customs and Border Protection ("CBP") encountered Petitioner after he entered the United States via the southern border without admission or parole.  *Id.*, ¶ 8.  On September 25, 2023, the Petitioner was released on an Order of Release on Recognizance.  *Id.*, ¶ 9.  As a condition of release, he was ordered not to violate any local, State, or Federal laws or ordinances.  *Id.*  On May 3, 2025, the Boston Police Department arrested Petitioner for the crime of larceny.  *Id.*, ¶ 10.  ICE became aware of Petitioner's arrest and determined that such arrest constituted a violation of his Order of Recognizance.  *Id.*, ¶ 11.   As such, ICE arrested and detained Petitioner on May 6.  *Id.*, ¶ 12.  Because Petitioner had not been in the United States for two years and because Petitioner was inadmissible to the United States pursuant to 8 U.S.C. § 1182(a)(7), ICE issued Petitioner with a Notice and Order of Expedited Removal per 8 U.S.C. § 1225(b)(1)(A)(iii)(II).  *Id.*, ¶¶ 12-13. 18.

As required by statute and regulation,[4] on May 6, ICE questioned Petitioner concerning his fear of return to Venezuela.  *Id.*, ¶ 14.  Petitioner indicated that he did not have a fear or concern about being returned to his home country or being removed from the United States.  *Id.*

---

[4] 8 C.F.R. § 235 provides the regulatory provisions regarding expedited removal and the credible fear process if an any alien claims a fear of persecution or torture.

Petitioner indicated that he would not be harmed if he were to return to his home country or country of last residence. *Id.* On May 8 at 7:10 a.m., ICE transferred Petitioner from Burlington, Massachusetts to an airport in Bedford, Massachusetts. *Id.*, ¶ 15. Petitioner departed Bedford, Massachusetts aboard a flight to San Antonio, Texas at 2:51 p.m. that same date. *Id.* As of May 9, Petitioner has been housed at the South Texas ICE Processing Center at 566 Veterans Drive Pearsall, Texas 78061. *Id.*, ¶ 16. ICE's detention of Petitioner is mandated by statute and regulation so it can effectuate his expedited removal order to Venezuela. *Id.*, ¶¶ 19-20. ICE records currently do not identify Petitioner as a member of Tren de Aragua ("TdA"). *Id.*, ¶ 18.

### C.  Petitioner's Habeas Petition and Motion for Temporary Restraining Order.

Petitioner filed his Petition on May 8, 2025 at approximately 2:58 PM requesting this Court order ICE not to remove Petitioner from the United States pursuant to the Proclamation invoking the AEA and to declare the Proclamation unlawful. Doc. No. 1, PRAYER FOR RELIEF. Petitioner asserted that he "has reason to believe" that he could be designated as an Alien Enemy under the Proclamation because he has several tattoos on his body. *Id.*, ¶ 8. As such, Petitioner filed his Petition "to proactively enjoin any possibility that he will be so designated" under the Proclamation and AEA. *Id.* Petitioner raised seven causes of action that were all premised upon his belief that he was detained and subject to removal under the AEA. *Id.*, CAUSES OF ACTION. Petitioner, however, did not challenge his arrest, detention, and removal from the United States as unlawful on any other legal theory. Petitioner alleged this Court had jurisdiction over the Petition because of his detention in the District at the time it was

filed. *Id.*, ¶ 7.[5] Petitioner also filed a Motion for a Temporary Restraining Order on May 8, 2025. Doc. No. 4.

On May 8, 2025, at approximately 6:23PM, this Court entered an order stating that Petitioner was not to be transferred from the District of Massachusetts absent the government providing the Court advance notice of the intended move. Doc. No. 9. The Court also ordered the government to file notice if Petitioner was not confined in the district. *Id.* Finally, the Court ordered that Petitioner not to be deported, removed, or otherwise transferred outside the United States until further Order of the Court. *Id.*

The Court provided the U.S. Attorney's Office with the Petition and the Service Order via e-mail at 6:37 PM on May 8. Doc. No. 10. On May 12, 2025, Respondents filed a Status Report with the Court advising the Court of Petitioner's transfer out of the district on May 8 and the Petitioner's location at the South Texas ICE Processing Center in Pearsall, Texas. Doc. No. 16. This information was provided to Petitioner's counsel by the undersigned on May 11. *Id.*

## ARGUMENT

Petitioner's detention is mandated by the INA and is unrelated to the Presidential Proclamation invoking the AEA. As such, Petitioner lacks standing to challenge the lawfulness of the AEA and his Petition is subject to dismissal on this basis. Additionally, while Petitioner does not ask this Court to review his expedited removal order, this Court would lack nonetheless jurisdiction to review Petitioner's order of removal. Finally, this Court lacks jurisdiction to

---

[5] While Petitioner may not have been detained in Massachusetts at the time his Petition was filed due to his flight departing from Massachusetts minutes prior to the Petition being filed, Respondents in this instance do not argue that this Court lacked jurisdiction over the Petition when it was filed.

enjoin ICE's removal of Petitioner per 8 U.S.C. § 1252(g) which bars district court review of any "decision or action by [ICE] to … execute removal orders." As such, this Court must deny Petitioner's Petition and Motion for Temporary Restraining Order.

### A.    Petitioner is Lawfully Detained Pursuant to 8 U.S.C. § 1225(b) and is not Subject to the Presidential Proclamation Invoking the Alien Enemies Act.

ICE's detention and removal of Petitioner is pursuant to an expedited removal order entered under the INA pursuant to 8 U.S.C. § 1225(b) and therefore Petitioner lacks standing to press his challenges concerning the lawfulness of the AEA.

Petitioner is detained subject to 8 U.S.C. § 1225 because he is an alien "who has not been admitted" to the United States and because Petitioner "has not affirmatively shown, to the satisfaction of an immigration officer, that [he] has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility". 8 U.S.C. § 1225(b)(1)(A)(iii)(II). Because Petitioner is inadmissible per 8 U.S.C. § 1182(a)(7) in that he lacks proper documents to demonstrate admission to the United States, ICE upon its arrest of Petitioner on May 8, 2025 exercised its authority to "order the alien removed from the United States without further hearing or review". *Id.* § 1225(b)(1)(A)(i). Per 8 U.S.C. § 1225(b)(1)(B)(IV), Petitioner "shall be detained … until removal." As stated by the Supreme Court, an individual issued an expedited removal "is not entitled to immediate release." *Thuraissigiam*, 591 U.S. at 111.

As required by statute and regulation, ICE conducted an interview in the Spanish language with Petitioner on May 8 to determine if he had a fear of persecution and if so, whether Petitioner needed to be referred for an interview with an asylum officer. Exh. A, ¶ 14. Petitioner, in a sworn statement, answered in the negative as to whether he had any fear or

concern about being returned to his home country or being removed from the United States.  *Id.*
He similarly answered in the negative as to whether he believed he would be harmed if he was
returned to his home country.  *Id.*

As explained by the Supreme Court in *Jennings*, 8 U.S.C. § 1225(b) "mandate[s]
detention of applicants for admission until proceedings have concluded."  538 U.S. at 297.  In
declining to find a statutory requirement to conduct bond hearings for such applicants for
admission, the Supreme Court explained that "nothing in the statutory text imposes any limit on
the length of detention … and neither [statutory provision] says anything whatsoever about bond
hearings."  *Id.*  As such, Petitioner's detention until removal is lawful pursuant to the plain
language of the statute and Supreme Court precedent.

Because Petitioner is detained pursuant to the INA on account of his expedited removal
order rather than in connection with the Presidential Proclamation and the AEA, Petitioner lacks
standing to challenge the legality of the AEA.  To establish standing, Petitioner bears the burden
to demonstrate that he has suffered an "injury in fact" that is "concrete and particularized," and,
if based on future action, "actual or imminent" rather than "conjectural" or "hypothetical"; (2)
"fairly traceable" to the alleged conduct of the defendant; and (3) "likely" redressable by a
favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119
L.Ed.2d 351 (1992).  "A grievance that amounts to nothing more than an abstract and
generalized harm to a citizen's interest in the proper application of the law does not count as an
injury in fact." *Carney v. Adams*, 592 U.S. 53, 58 (2020) (cleaned up).  Here, Petitioner cannot
demonstrate standing to challenge the legality of the Proclamation because he has not been
designated as an Alien Enemy and is not being detained pursuant to the AEA.  Instead, as
explained above, he is detained pursuant to the INA on account of his expedited removal order.

Further, ICE records currently do not identify Petitioner as a member of TdA.  Exh. A ¶ 18.
Petitioner's speculative claim that he has "reason to believe that he could be subjected to
imminent removal" (Doc. No. 1) under the AEA because he has tattoos does not satisfy his
burden of proof to satisfy Article III's requirement that he demonstrate an actual or imminent
injury in fact.[6]

Additionally, because Petitioner is detained in the Western District of Texas, he appears
to be a class member and subject to the protections set forth by the U.S. District Court in *Sanchez
Puentes* and *M.A.P.S.* where the district court ordered that the government provide "notice of any
designation as an Alien Enemy under the Proclamation at least 30 days prior to any removal
pursuant to the Proclamation".  *See M.A.P.S.*, 2025 WL 1379220, at *1.  The court also ordered
advance notice to class counsel of any intended transfer out of the Western District of Texas.  *Id.*
As such, if ICE designated Petitioner as an Alien Enemy in the future, Petitioner could then
satisfy the standing requirement and could press his challenges against the lawfulness of the
Proclamation and the AEA.  But until then, Petitioner cannot demonstrate a concrete injury that
requires this Court to entertain Petitioner's claims regarding the lawfulness of the AEA or

---

[6] The facts pled in this Petitioner differ markedly from those set forth in *A.S.R. v. Trump*,
No. 3:25-CV-00113, 2025 WL 1378784, at *8 (W.D. Pa. May 13, 2025) where the district court
found the petitioner established standing to challenge his detention pursuant to the AEA and the
Proclamation because petitioner's "neighbor had reported that he is a member of the TdA," "ICE
officers asked him about his tattoos," ICE filed a document "accusing [petitioner] of being
affiliated with TdA", and petitioner had already been in removal proceedings under the INA in
New Jersey when he was abruptly transferred to Texas "(thereby apparently delaying his
potential removal under the INA)".  In that case, the court found that when A.S.R. filed his
petition, he was in custody "pursuant to the Proclamation and the AEA" and therefore satisfied
the standing requirement. *Id.,* at *9.  Here, in contrast, when Petitioner filed his Petition, he was
detained under the INA on account of his expedited removal order under 8 U.S.C. §
1252(b)(1)(B)(iii)(IV).

requires the Court to order Petitioner not be removed pursuant to the AEA. *See Food & Drug Admin. v. All. for Hippocratic Med.,* 602 U.S. 367, 378, 144 S. Ct. 1540, 1554, 219 L. Ed. 2d 121 (2024) ("federal courts do not issue advisory opinions about the law—even when requested by the President.").

As Petitioner is not detained on account of the AEA and there is no basis to believe Petitioner will be subject to detention and removal under the AEA, this Court should deny Petitioner's Motion for Temporary Restraining Order and deny his Petition.

**B. This Court lacks Jurisdiction to Review an Expedited Removal Order.**

Petitioner does not specifically ask this Court to review the Expedited Removal order entered against him and this Court would lack jurisdiction to do so if he sought such judicial intervention. As explained below, Congress provided extremely limited habeas review in individual cases of expedited removal orders and the only issues related to the expedited removal process that are subject to judicial review are not in dispute in this matter.

Title 8, section 1252(a)(2)(A), titled "Matters not subject to judicial review," provides that, for "[r]eview relating to section 1225(b)(1)"—including any order of expedited removal or credible fear determination issued under section 1225(b)(1)—"[n]otwithstanding any other provision of law ... no court shall have jurisdiction to review ... except as provided in subsection (e) [i.e., section 1252(e)]," "any individual determination or [any] cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1)," "a decision ... to invoke the provisions of such section," or "procedures and policies adopted ... to implement the provisions of section 1225(b)(1)." 8 U.S.C. § 1252(a)(2)(A)(i), (ii), (iv). Section 1252(a)(2)(A)(iii) further eliminates jurisdiction—without any exception under

subsection (e)—to review "the application of [section 1225(b)(1)] to individual aliens, including the determination made under section 1225(b)(1)(B)."[7]

Section 1252(a)(2)(A) thus squarely removes from federal courts any jurisdiction to review issues "relating to section 1225(b)(1)," except as "provided in subsection (e)." *Make the Road New York v. Wolf*, 962 F.3d 612, 626 (D.C. Cir. 2020); *see also Avendano-Ramirez v. Ashcroft*, 365 F.3d 813, 818 (9th Cir. 2004) (Section 1252(a)(2)(A) bars jurisdiction unless § 1252(e) restores it "to a rather narrow group of questions"). Under Section 1252(e), a district court only may review whether the individual:

- Is an alien
- Was ordered removed under 8 U.S.C. § 1225(b)(1); and
- Whether the petitioner can prove, by a preponderance of the evidence, that the petitioner is a Lawful Permanent Resident, a refugee, or an asylee and that such status has not been terminated.

*See* 8 U.S.C. § 1252(e)(2)(A)-(C); *Thuraissigiam*, 591 U.S. at 111. Section 1252(e)(5) further commands that in "determining whether an alien has been ordered removed under [8 U.S.C. § 1225(b)(1)] the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner. There shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal."

In accordance with the above, Petitioner can only raise three issues as set forth in Section 1252(e)(2) in a habeas corpus proceeding before this Court, but these three issues are not areas of

---

[7] Congress did however permit limited systemic review of challenges to the "validity of the system," defined as whether the expedited removal statute or any implementing regulation is constitutional or whether such statute and regulation is inconsistent with the INA or other statute. 8 U.S.C. § 1252(e)(3)(A). Such challenges must be brought in the U.S. District Court for the District of Columbia. *Id.*

dispute in this litigation.  Here, Petitioner is an alien, he is not a United States citizen.  Petitioner is subject to an expedited removal order.  And Petitioner is not an asylee, refugee, or a permanent resident.  Accordingly, the Court's review of any other aspect of the expedited removal order is foreclosed by 8 U.S.C. 1252(e)(1) which definitively states that "[w]ithout regard to the nature of the action or claim … no court may enter declaratory, injunctive, or other equitable relief in any action pertaining to an order to exclude an alien in accordance with section 1225(b)(1) of this title except as specifically authorized in [Section 1252(e)(2)."

Courts within this district and around the country recognize the narrow judicial review available in habeas for expedited removal orders and routinely dismiss petitions challenging the issuance of an expedited removal order.  *See Arandi v. Morgan*, No. 19-cv-12351-RGS, 2020 WL 1891949, at * 1 (D. Mass. Apr. 16, 2020) (Court lacked jurisdiction to review expedited removal order under 8 U.S.C. § 1252(a)(2)(A) and Section 1252(e)); *Khan v. Holder*, 608 F.3d 325, 329-330 (7th Cir. 2010) (collecting cases and joining with "courts that have considered the issue [to] hold that we lack jurisdiction to inquire whether the expedited removal procedure to which the Khans were subjected was properly invoked."); *Castro v. United States Dep't of Homeland Sec.,* 835 F.3d 422, 430 (3d Cir. 2016) ("§ 1252 makes abundantly clear that if jurisdiction exists to review any claim related to an expedited removal order, it exists only under subsection (e) of the statute."); *Khelghatdoost v. Murdock*, No. 3:23-CV-0079-B, 2023 WL 172033, at *2 (N.D. Tex. Jan. 11, 2023) (Finding no jurisdiction over claim from petitioner who argued his expedited removal was improper because such claim "does not fall within the limited jurisdiction afforded the Court on habeas corpus petitions.") *Banci v. Nielson*, 312 F. Supp. 3d 729, 736 (W.D. Tex. 2018) (court has no jurisdiction to review expedited removal order under 8 U.S.C. § 1252(e)).

14

For these reasons, judicial review of Petitioner's expedited removal order is prohibited.

**C.      This Court Lacks Jurisdiction to Interfere with Petitioner's Removal from the United States.**

This Court is without jurisdiction to review ICE's decision to commence expedited removal proceedings or to stay Petitioner's removal pursuant to 8 U.S.C. § 1252(g).   Section 1252(g) states that "no court shall have jurisdiction to hear any cause or claim by ... any alien arising from the decision or action by [ICE] to commence proceedings … or execute removal orders against any alien."   This provision applies "notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title." *Id.*

Section 1252(g) is "directed against a particular evil: attempts to impose judicial constraints upon [certain categories of] prosecutorial discretion." *Reno v. Am.-Arab Anti-Discrimination Comm*., 525 U.S. 471, 485 n.9 (1999).   As explained recently by a district court, ICE's "discretionary decision to place [petitioner] in expedited removal proceedings is precisely the action this statute refers to" when referencing a decision to "commence proceedings." *Linarez v. Garland*, No. 3:24-CV-488, 2024 WL 4656265, at *5 (M.D. Pa. Sept. 24, 2024), *report and recommendation adopted sub nom. Cordon-Linarez v. Garland*, No. 3:24-CV-00488, 2024 WL 4652824 (M.D. Pa. Nov. 1, 2024).   As such, any claim raised by Petitioner regarding ICE's decision to initiate expedited removal proceedings against Petitioner would be barred by Section 1252.   *Sissoko v. Rocha*, 509 F.3d 947, 949 (9th Cir. 2007) (Section 1252(g) barred claim regarding detention that arose from decision to commence expedited removal proceedings.)

Additionally, courts within this district, and around the country, routinely hold that they lack jurisdiction to enter an order staying removal based on section 1252(g)'s plain language.

*See e.g., Tejada v. Cabral,* 424 F. Supp. 2d 296, 298 (D. Mass. 2006) ("Congress made it quite clear that all court orders regarding alien removal—be they stays or permanent injunctions— were to be issued by the appropriate courts of appeals."); *Aziz v. Chadbourne,* No. CIV.A.07- 11806-GAO, 2007 WL 3024010, at *1 (D. Mass. Oct. 15, 2007) ("[a]ny stay of the final order of removal would squarely interfere with the execution of the removal order."); *Martin v. U.S. Immigration & Customs Enf't,* No. CIV.A. 13-11329-DJC, 2013 WL 3282862, at *3 (D. Mass. June 26, 2013) ("this Court lacks authority to issue a stay of a final order of removal."); *Nelson v. Hodgson*, No. CIV.A. 14-10234-DJC, 2014 WL 2207621, at *2 (D. Mass. May 27, 2014) (the "provisions of the REAL ID Act preclude this court from entering an order staying petitioner's removal."); *Doe,* 2018 WL 4696748, at *3 (same); *Compere*, 368 F. Supp. 3d 164, 170 (D. Mass. 2019) (same); *Lopez Lopez v. Charles*, No. 12-CV-101445-DJC, 2020 WL 419598, at *4 (D. Mass. Jan. 26, 2020) (same).

Indeed, Petitioner's "requested relief, a stay from removal, would necessarily impose a judicial constraint on immigration authorities' decision to execute the removal order, contrary to the purpose of § 1252(g)." *Viana v. President of United States*, No. 18-CV-222-LM, 2018 WL 1587474, at *2 (D.N.H. Apr. 2, 2018), *aff'd sub nom. Viana v. Trump*, No. 18-1276, 2018 WL 11450369 (1st Cir. June 18, 2018).

Respondents respectfully request this Court vacate its Order staying Petitioner's removal immediately so ICE can effectuate Petitioner's removal order.

## **CONCLUSION**

For the reasons set forth above, the Petition and Motion for Temporary Restraining Order must be denied and the Court's Order enjoining Petitioner's removal from the United States must be vacated.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated: May 22, 2025                     By:     */s/ Mark Sauter*
                                                MARK SAUTER
                                                Assistant United States Attorneys
                                                United States Attorney's Office
                                                1 Courthouse Way, Suite 9200
                                                Boston, MA 02210
                                                Tel.: 617-748-3100
                                                Email: mark.sauter@usdoj.gov

## Local Rule 7.1 Certification

I certify that I have unsuccessfully attempted multiple times to confer with Plaintiff's counsel and to explain the basis of Petitioner's arrest and detention as set forth in this filing.

Dated: May 22, 2025                     By:     */s/ Mark Sauter*
                                                Mark Sauter
                                                Assistant United States Attorney

## CERTIFICATE OF SERVICE

I, Mark Sauter, Assistant United States Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated:  May 22, 2025                    By:     */s/ Mark Sauter*
                                                Mark Sauter
                                                Assistant United States Attorney

17